IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | No. 3:19-cr-00371-L-4 |
| | § | |
| TERESA ONOFORE FRANCO | § | |
| #92186-298, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the court are Defendant Teresa Onofore Franco's two motions for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (Docs. 205, 213), filed on September 6, 2023 ("September 6th compassionate release motion"), and November 21, 2023 ("November 21st compassionate release motion"), as well as her motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 of the Federal Sentencing Guidelines (Doc. 212), filed on November 21, 2023 ("Amendment 821 motion"). After careful consideration of the motions and applicable authority, the court **denies** Defendant's motions.

I.

Defendant pleaded guilty to one count of possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1) and (b)(1)(C). Doc. 181. On May 16, 2022, the court sentenced Defendant to 156 months' imprisonment. *See id.* at 2. Defendant's projected release date is February 28, 2030. *See* Inmate Locator (bop.gov) (search for Defendant's prison number; last visited July 3, 2024).

On September 6, 2023, Defendant filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that she is the only available caregiver for her seven-year-old daughter, who currently lives with her grandmother (presumably the mother of the child's father)

in Mexico. According to Defendant, the grandmother's daughter stole money and drugs from the Cartel, and the Cartel has threatened to abduct Defendant's daughter if the grandmother does not disclose the whereabouts of her own daughter. Doc. 205 at 1-2. Further, the grandmother is losing sight in one eye and has diabetes and hypertension, preventing her from caring for Defendant's daughter. *Id.* at 2. Defendant argues that these circumstances, coupled with her own rehabilitation and low recidivism risk, warrant a sentence reduction.

On November 21, 2023, Defendant filed a second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that she is the sole caregiver for two of her other children in Nevada who will soon be placed into foster care because their father was arrested and faces deportation. Doc. 213 at 1. That same day, Defendant also filed a motion for sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 (Doc. 212). She then filed a substantially similar motion a week later that the court denied, finding that she is ineligible for relief under Amendment 821. Docs. 214, 219, 220, 221.

II.

## A.  September 6th and November 21st compassionate release motions

Looking first at the compassionate release motions, a prisoner seeking compassionate release must show that (1) "extraordinary and compelling reasons" justify the reduction of her sentence, (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission," and (3) early release would be consistent with the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Jackson*, 27 F. 4th 1088, 1089 (5th Cir. 2022); 18 U.S.C. § 3582(c)(1)(A).[1]

---

[1] Additionally, before seeking relief from the court, a defendant must submit a request to the warden of her facility to move for compassionate release on her behalf and then either exhaust her administrative remedies or wait for the lapse of 30 days after the warden received the request. *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337, 338 (5th Cir. 2021) ("[A]n inmate has two routes by which he may exhaust his administrative remedies.

Section 3582(c)(1)(A) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Sentencing Commission. *See* 28 U.S.C. § 994(t). The Sentencing Commission has issued a policy statement providing for six types of "extraordinary and compelling reasons" that may justify a sentence reduction: (1) medical conditions, (2) age, (3) family circumstances, and (4) abuse of defendant while in custody, (5) other reasons, and (6) an unusually long sentence. U.S.S.G. § 1B1.13.

1. Defendant fails to identify an extraordinary and compelling reason for compassionate release.

Here, Defendant relies on family circumstances, which include, in relevant part, "[t]he death or incapacitation of a caregiver of the defendant's minor child …" U.S.S.G. § 1B1.13, Application Note 1. While the U.S.S.G. do not provide a definition of "incapacitation," "[f]or guidance [on what constitutes] 'incapacitation,' courts look to the [Bureau of Prison's "BOP"] non-binding Program Statement for processing compassionate release requests." *United States v. Jiles*, Case No. 9:18-CR-41(1), 2023 WL 3185786, at *9 (E.D. Tex. May 1, 2023) (collecting cases). For purposes of determining whether a defendant is entitled to compassionate release, BOP Program Policy Statement 5050.50 states that a "family member caregiver" is incapacitated if he or she has "suffered a severe injury (e.g., auto accident) or suffers from a severe illness (e.g., cancer) that renders the caregiver incapable of caring for the child." BOP Program Policy Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g). Further, the policy statement requires the

---

Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'") (citation omitted). But the government must raise the exhaustion defense—the court cannot do it *sua sponte*. *See United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1-2 (5th Cir. Jan. 5, 2022) (vacating the denial of a compassionate release when the government did not raise the exhaustion issue). Here, because the Government has not filed a response and therefore has not raised the exhaustion defense, the court assumes that Defendant has exhausted her compassionate release claims.

defendant to provide "verifiable medical documentation of the [caregiver's] incapacitation." *Id.* Again, while this policy statement is not binding on the courts, "courts in this Circuit and elsewhere frequently consider the Policy Statement when assessing whether to grant a defendant compassionate release." *United States v. McHugh*, Criminal Action N. 21-63-SDD-SDJ, 2024 WL 2319814, at *4 (M.D. La. May 22, 2024). "Thus, where a caregiver suffers from an adverse health condition, but that condition is not severe enough to render the caregiver incapable of caring for the defendant's child, courts have generally denied compassionate release. Courts have likewise denied compassionate release where the defendant does not produce verifiable medical documentation demonstrating that the caregiver is incapacitated, as opposed to merely feeble." *Id.* (citing *United States v. Barrios*, EP-20-CR-01838(1)-DCG, 2022 WL 7265985, at *4 (W.D. Tex. Sept. 27, 2022)) (citing, in turn, *United States v. Thomas*, No. 3:17-CR-0154, 2020 WL 6737872, at *3 (N.D. Tex. Nov. 16, 2020) (denying compassionate release where defendant had neither "provided any documentation of his [children's caregiver's] illnesses" nor "explained how [the caregiver]'s ailments [we]re so severe that she [wa]s physically incapable of caring for his children"); *United States v. Rand*, No. 16-cr-00029, 2021 WL 4394782, at *6 (D. Nev. Sept. 24, 2021), *aff'd* No. 21-10288, 2022 WL 3359173 (9th Cir. Aug. 15, 2022)) (denying compassionate release where, among other shortcomings, the defendant "failed to submit 'verifiable documentation'" regarding his child's caregiver's medical conditions) (further citation omitted).

Defendant fails to show exceptional family circumstances. First, she fails to show that the grandmother of her child in Mexico is incapacitated. Defendant provided what appears to be a one-page medical record. Doc. 206 at 2. This record, however, is blurry and in Spanish. It is not even clear whose record it is. The court cannot conclude from this limited evidence that the grandmother is incapable of caring for Defendant's child. *See*, *e.g.*, *United States v. Wright*, No. 1:19-cr-63-LG-

JCG-2, 2021 WL 4066675, at *1 (S.D. Miss. Sept. 7, 2021) (denying compassionate release where there was no evidence that conditions like hypertension, obesity, and borderline diabetes left a caregiver "completely disabled").

Second, courts have found that a parent seeking to show exceptional family circumstances because of the incapacitation of a caregiver must show that he or she would be a suitable caregiver—an inquiry that considers whether the defendant would be "legally entitled to the custody of the children" if released and whether he or she would be a suitable caregiver generally— and Defendant fails to make that showing. *See*, *e.g.*, *United States v. Hackler*, No. 3:12-cr-201-O, 2023 WL 360244, at *2 (N.D. Tex. Jan. 23, 2023) (explaining that, "although not explicit from the guidelines, the compassionate release applicant arguing only-available-caregiver status must show that he or she is a suitable caregiver") (citing *United States v. Paul*, Criminal Action No. 3:18-cr-00227, 2020 WL 5807343, at *1 (S.D.W.V. Sept. 25, 2020)). Thus, even if the incarceration of the father of Defendant's children renders him incapacitated (a possibility that some courts have countenanced, *see United States v. Ray*, No. 3:19-cr-46-JD, 2023 WL 3411024, at *2 (N.D. Ind. May 12, 2023), and the children would be forced into foster care, this does not necessarily warrant a sentence reduction. *See*, *e.g.*, *United States v. Johnson*, No. 1:15-cr-00059-NONE, 2020 WL 6075867, at *5 (E.D. Cal. Oct. 15, 2020 (finding that extraordinary and compelling reasons did not exist because it was unclear based on the record before the court whether the defendant would be found "'a suitable caretake'" for his child by the governing authorities); *United States v. Dawkins*, No. CR 08-412, 2021 WL 1946662, at *3 (W.D. Pa. May 14, 2021) (denying motion for compassionate release where the defendant's child had been placed in foster care because the defendant "[f]ailed to support his motion with evidence that he [was] a suitable caregiver for his

minor child" and because it was "unclear what, if any, custodial or parental rights Defendant has retained over the minor at issue").

Defendant offers no proof—or even argument—that she would be legally entitled to the custody of the children. Further, while Defendant does allege that she will have a place to stay after release, she does not allege or prove that she would be able to care for her children financially. Thus, Defendant has demonstrated neither her suitability nor legal entitlement to act as caregiver for the children. *See Johnson*, 2020 WL 6075867, at *5.

Third, even assuming Defendant could show the incapacity of the relevant actors and that she would be a suitable caretaker, she still fails to show that there are no other available caretakers. Her allegations on this issue are wholly conclusory. She does not explain why other family members listed in the PSR—including her mother, father, and half-siblings—could not act as caregivers. Courts refuse to find extraordinary circumstances in such circumstances. *See, e.g.*, *Hackler*, 2023 WL 360244, at *3 ("Here, even assuming [that] Hackler's mother is incapacitated, he has not shown that he is the only available caretaker. He says that his sister is on drugs, precluding her from acting as a caretaker for his son, but he provides no evidence in support of that contention. Further, the PSR indicates that Hackler has a father and a brother. But Hackler provides no argument or evidence as to why they could not serve as caretakers.") (internal citations omitted); *United States v. Azama*, Case No. 2:22-cr-00060-GMN-NJK-1, 2024 WL 81384, at *3 (D. Nev. Jan. 5, 2024) ("The Court will not grant compassionate release based on conclusory arguments…Defendant has not shown he is the only available caregiver for his daughter. Defendant acknowledges in his motion that his mother and siblings reside in Israel, and that his current wife is prepared to move to Israel to assist with raising his daughter. And Defendant has

not shown friends in the community or relatives other than his siblings are unable to assist with his daughter's care.").

Finally, as for Defendant's rehabilitation efforts, while laudable, they are not enough to support a compassionate release without an independent extraordinary circumstance, which, as explained, Defendant has failed to identify. *See*, *e.g.*, *United States v. Hudec*, No. 4-91, 2020 WL 4925675, at *5 (E.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").

    2.  <u>Defendant also fails to show the sentencing factors support a compassionate release</u>.

Even if Defendant demonstrated extraordinary and compelling circumstances justifying her release, the court must consider the sentencing factors. 18 U.S.C. § 3553(a). Based on the record as a whole and after weighing the sentencing factors, the court finds in its discretion that they do not support a sentence reduction. *See United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) ("compassionate release is discretionary, not mandatory"). Defendant is incarcerated for the offense of possession with intent to distribute a controlled sentence. In 2022, the court sentenced her to 156 months' imprisonment, which was well below the low-end of the 235–240-month Guideline range. *See* Doc. 153-1 at 15.

Thus, reducing Defendant's sentence now will not adequately reflect the seriousness of her offense, promote respect for the law, provide just punishment for the offense, adequately deter criminal conduct, or protect the public from further crimes. To date, even giving Defendant credit for time spent in custody before the judgment, Defendant has not served 50% of her 156-month sentence, and her projected release date is not until February 28, 2030. *See United States v.*

*Thompson*, 984 F.3d 431, 433-34 (5th Cir. 2021) (reserving compassionate release for defendants who "had already served the lion's share of their sentences").

Defendant relies on her rehabilitation efforts, good conduct, and programming. The court commends Defendant for all her hard work and achievements; yet even considering *Conception v. United States*, the court finds that the § 3553(a) factors do not support a sentence reduction at this time. 597 U.S. 481, 486 (2022) ("[A] district court adjudicating a motion under the First Step Act may consider other intervening changes of law (such as changes to the Sentencing Guidelines) or changes of fact (such as behavior in prison) in adjudicating a First Step Act motion.").

Accordingly, the September 6th and November 21st compassionate release motions are **denied**.

### B.  The Amendment 821 Motion

Also pending before the court is Defendant's motion for a sentence reduction under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the Federal Sentencing Guidelines. Doc. 212. The court already denied Defendant's other motion for a sentence reduction on these grounds. *See* Docs. 219-221. It found that Defendant is not eligible for a sentence reduction under Amendment 821 because : (1) Defendant has one or more criminal history point from Chapter Four, Part A, *see* U.S.S.G. § 4C1.1(a)(1); (2) Defendant was not previously assessed status points pursuant to U.S.S.G. § 4A1.1(d); and (3) because the (one-or-two-point) reduction of the criminal history points does not change Defendant's Criminal History Category. *See* Doc. 221.

Nothing in the pending Amendment 821 motion changes any of that; therefore, the Amendment 821 motion is **denied**.

III.

For the reasons discussed herein, Defendant's September 6th and November 21st compassionate release motions (Docs. 205, 213) and Amendment 821 Motion (Doc. 212) are **denied.**

**It is so ordered** this 9th day of July, 2024.

Sam A. Lindsay
United States District Judge